FILED
3/18/25 9:30 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 22-10340-GLT |
| | Chapter 11 |
| **INSULATION COATINGS & CONSULTANTS, LLC,** | |
| *Debtor.* | |
| | |
| **INSULATION COATINGS & CONSULTANTS, LLC,** | Adv. Pro. No. 23-1002-GLT |
| *Plaintiff,* | Related to Dkt. Nos. 52, 56, 57, 58, 60, 61, 62, 69, 72, 73 |
| v. | |
| **LIBERTY MUTUAL INSURANCE CO.,** | |
| *Defendant.* | |

Bryan G. Baumann, Esq.  
Guy C. Fustine, Esq.  
Knox McLaughlin Gornall & Sennett, P.C.  
Erie, PA  
*Attorneys for the Plaintiff*

William F. Savino, Esq.  
Woods Oviatt Gilman LLP  
Buffalo, NY  
*Attorney for the Defendant*

## <u>MEMORANDUM OPINION</u>

Insulation Coatings and Consultants, LLC ("Debtor") sued Liberty Mutual Insurance Company ("Liberty Mutual") to recover against certain construction bonds after it was stiffed on a job.[1] But Liberty Mutual asserts that the Debtor waived recourse against the bonds by entering into so-called "liquidating agreements" with the general contractor to assert its claims

---

[1] See *Exhibit B*, Dkt. No. 52-3.

against the project's owner instead.[2] The Debtor denies having waived anything.[3] Each party seeks summary judgement. While the Court concludes that Liberty Mutual's waiver argument is overstated, the Debtor has not established a present right to payment within the bonds' coverage. As such, the Court will dismiss the complaint without prejudice.

I. **BACKGROUND**

Although the facts presented by the parties are undisputed, that does not mean they tell a complete and coherent story. In 2014, LPCiminelli, Inc. contracted with the State University Construction Fund (the "Fund") to act as general contractor for the State University of New York at Buffalo School of Medicine & Biomedical Sciences Building Project ("Project").[4] The Debtor was a subcontractor on the Project providing labor, services, and materials.[5] LPCiminelli obtained bonds with Liberty Mutual to secure both its performance of the Project and guarantee payment of the subcontractors, materialmen, and suppliers "furnishing . . . labor or materials in prosecution of the work provided in [the general] Contract" (collectively, the "Bonds").[6] LPCiminelli is obligated to indemnify Liberty Mutual on any action arising from the Bonds.[7]

The Project did not go smoothly. In separate litigation filed against the Fund in 2022 (the "Fund Litigation"), LPCiminelli alleged that the Project was extensively redesigned

---

[2] *Motion by Defendant Liberty Mutual Life* [sic] *Insurance Company to Dismiss Adversary Complaint and for Other Relief*, Dkt. No. 52.

[3] *Debtor's Cross-Motion for Summary Judgment on Liability*, Dkt. No. 56.

[4] *Statement of Undisputed Material Facts (Local Rule 7056-1)*, Dkt. No. 52-9 at ¶ 1; *Response to Statement of Undisputed Material Facts and In Support of Cross-Motion for Summary Judgment*, Dkt. No. 58 at ¶ 1.

[5] *Statement of Undisputed Material Facts (Local Rule 7056-1)*, Dkt. No. 52-9 at ¶ 2; *Response to Statement of Undisputed Material Facts and In Support of Cross-Motion for Summary Judgment*, Dkt. No. 58 at ¶ 2.

[6] *Exhibit C*, Dkt. No. 52-4; See *Statement of Undisputed Material Facts (Local Rule 7056-1)*, Dkt. No. 52-9 at ¶ 4; *Response to Statement of Undisputed Material Facts and In Support of Cross-Motion for Summary Judgment*, Dkt. No. 58 at ¶ 4.

[7] *Exhibit D*, Dkt. No. 52-5 at ¶ 4.

2

shortly after work began due to the Fund's mismanagement.[8] But because the medical school's accreditation hinged on timely completion, it appears everyone pressed forward with an increasing scope of work without amended contracts or knowing the ultimate cost impact.[9] Based on their "understandings," LPCiminelli submitted claims for the actual time and cost overruns expecting that the Fund would eventually issue change orders increasing the amounts payable under the general contract.[10] In the interim, LPCiminelli and its subcontractors (including the Debtor) incurred costs attributable to both delays and work not contemplated by the original contract.[11]

In February 2017, the Debtor executed a liquidating agreement prepared by LPCiminelli to address the Debtor's claim for "lost time."[12] It provided that LPCiminelli would submit a claim for $820,977 to the Fund on the Debtor's behalf (the "Claim").[13] For its part, the Debtor agreed to the following:

> The liability of LPCiminelli to you with respect to the Claim is hereby agreed to be liquidated to the amount that may be recovered by LPCiminelli against the Fund with respect to the Claim. *You hereby agree to accept in full satisfaction and discharge of the Claim against LPCiminelli the amount, if any, recovered and collected by LPCiminelli from the Fund for the Claim.* The liability and obligation of LPCiminelli to you to pay amounts with respect to the Claim shall be fixed in the amount of the net proceeds arising from any recovery and collection of the Claim by or on behalf of LPCiminelli from the Fund by settlement, lawsuit, or other proceeding.[14]

---

[8]   *Exhibit G*, Dkt. No. 52-8 at ¶¶ 10-22.

[9]   Id. at ¶¶ 23-25.

[10]  Id. at ¶¶ 24-27.

[11]  Id. at ¶¶ 28-29.

[12]  *Statement of Undisputed Material Facts (Local Rule 7056-1)*, Dkt. No. 52-9 at ¶ 9; *Response to Statement of Undisputed Material Facts and In Support of Cross-Motion for Summary Judgment*, Dkt. No. 58 at ¶ 9.

[13]  *Exhibit E*, Dkt No. 52-6 at 1.

[14]  Id.

The Debtor also agreed to "continue to progress [its] work on the Project in a timely manner" with LPCiminelli promising prompt payment for all undisputed amounts under the subcontract.[15]

The Debtor concluded its work on the Project in November 2017, and the Project was deemed substantially completed by the end of that month.[16] The Claim, like the Project's cost overruns generally, remained unresolved. LPCiminelli also withheld payment of the retention balance under the subcontract, asserting offsets for charges it paid the Debtor in excess of the subcontract.[17]

In October 2018, the Debtor sued Liberty Mutual in the Supreme Court of New York to recover $1,059,386 for unpaid labor and materials against the Bonds (the "Bond Litigation").[18] It appears that the Bond Litigation was filed primarily to prevent the release of the surety while negotiations with LPCiminelli and the Fund continued.[19] As such, years passed without the Bond Litigation advancing beyond the filing of a complaint.

In August 2019, the Debtor and LPCiminelli executed a second liquidating agreement to settle their dispute over the retention balance.[20] LPCiminelli agreed to pay the $126,412.56 retention balance to the Debtor subject to the right to recoup up to that amount against

---

[15] Id.

[16] *Statement of Undisputed Material Facts (Local Rule 7056-1)*, Dkt. No. 52-9 at ¶¶ 7-8; *Response to Statement of Undisputed Material Facts and In Support of Cross-Motion for Summary Judgment*, Dkt. No. 58 at ¶¶ 7-8.

[17] *Exhibit F*, Dkt. No. 52-7.

[18] See *Exhibit B*, Dkt. No. 52-3; *Statement of Undisputed Material Facts (Local Rule 7056-1)*, Dkt. No. 52-9 at ¶ 13; *Response to Statement of Undisputed Material Facts and In Support of Cross-Motion for Summary Judgment*, Dkt. No. 58 at ¶ 13.

[19] See *Transcript of September 28, 2023 Hearing*, Dkt. No. 79 at 12:21-13:4; see also N.Y. State Fin. Law § 137(4)(b) ("Except as provided in section two hundred twenty-g of the labor law, no action on a payment bond furnished pursuant to this section shall be commenced after the expiration of one year from the date on which the public improvement has been completed and accepted by the public owner.").

[20] *Exhibit F*, Dkt. No. 52-7.

any recovery of the Claim from the Fund.[21] "[I]n consideration of the advance . . . of the Retention," the Debtor "waive[d] any recourse against [LPCiminelli] related to the Project" if the Claim proved uncollectable.[22] The parties also reaffirmed the terms of their 2017 agreement to the extent not modified by the new agreement.[23]

Ultimately, the Fund's refusal to issue change orders and award additional compensation prompted LPCiminelli to commence the Fund Litigation to recover the alleged cost impacts for the subcontractors and itself.[24] The Fund Litigation remains pending and ongoing settlement efforts have not been fruitful.[25]

In August 2022, about four months after LPCiminelli sued the Fund, the Debtor filed a chapter 11 petition.[26] The Debtor then removed the Bond Litigation to the United States District Court for the Western District of New York, who then transferred it to the Western District of Pennsylvania, leading to the referral to this Court.[27] While Liberty Mutual unsuccessfully sought reconsideration of the venue change,[28] the Court required it to finally file a responsive pleading, resulting in the cross-motions for summary judgment. After a hearing, the Court took

---

[21] Id. at ¶¶ 2-3. LPCiminelli waived any shortfall arising from a recovery that is less than the retention payment. Id. at ¶ 4.

[22] Id. at ¶ 5.

[23] Id. at ¶¶ 1, 6.

[24] *Statement of Undisputed Material Facts (Local Rule 7056-1)*, Dkt. No. 52-9 at ¶¶ 17-18; *Response to Statement of Undisputed Material Facts and In Support of Cross-Motion for Summary Judgment*, Dkt. No. 58 at ¶¶ 17-18; see *Exhibit G*, Dkt. No. 52-8 at ¶ 27.

[25] See, e.g., *Status Report*, Dkt. No. 88.

[26] See *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, Case No. 22-10340-GLT, Dkt. No. 1.

[27] *Statement of Undisputed Material Facts (Local Rule 7056-1)*, Dkt. No. 52-9 at ¶¶ 14-15; *Response to Statement of Undisputed Material Facts and In Support of Cross-Motion for Summary Judgment*, Dkt. No. 58 at ¶¶ 14-15.

[28] *Statement of Undisputed Material Facts (Local Rule 7056-1)*, Dkt. No. 52-9 at ¶ 16; *Response to Statement of Undisputed Material Facts and In Support of Cross-Motion for Summary Judgment*, Dkt. No. 58 at ¶¶ 16, 26; *Defendant Liberty Mutual's Response to ICC's Statement of Undisputed Material Facts*, Dkt. No. 62 at ¶ 26.

them under advisement. In the interim, efforts to consensually resolve the Fund Litigation continued without success.

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a non-core proceeding, "related to" a case arising under title 11 of the United States Code. The Debtor has consented to this Court entering final orders pursuant to 28 U.S.C. § 157(c)(2),[29] but Liberty Mutual has not.[30] That said, Liberty Mutual clearly does not oppose entry of a judgment of dismissal.

## III. POSITIONS OF THE PARTIES

### A. Liberty Mutual

Liberty Mutual seeks dismissal, arguing that the two liquidating agreements between the Debtor and LPCiminelli preclude any recovery from the Bonds.[31] Essentially, Liberty Mutual asserts that the Debtor agreed in the liquidating agreements to look exclusively to the Fund to satisfy its claim against LPCiminelli.[32] Therefore, since the Bonds only guaranty amounts due

---

[29] *Consent to Entry of Final Orders or Judgment by the United States Bankruptcy Court*, Dkt. No. 13.

[30] *Objection to Consent to Entry of Final Orders or Judgment by the United States Bankruptcy Court*, Dkt. No. 19.

[31] See *Motion by Defendant Liberty Mutual Life [sic] Insurance Company to Dismiss Adversary Complaint and for Other Relief*, Dkt. No. 52 at ¶¶ 5-7. Liberty Mutual's challenges to venue and jurisdiction were rendered moot by the district court's subsequent denial of its motion to reconsider the venue change. See *Response to Statement of Undisputed Material Facts and In Support of Cross-Motion for Summary Judgment*, Dkt. No. 58 at ¶¶ 16, 26; *Defendant Liberty Mutual's Response to ICC's Statement of Undisputed Material Facts*, Dkt. No. 62 at ¶ 26.

[32] See *Motion by Defendant Liberty Mutual Life [sic] Insurance Company to Dismiss Adversary Complaint and for Other Relief*, Dkt. No. 52 at ¶¶ 5-7; *Memorandum of Law on Behalf of Defendant Liberty Mutual Insurance Company in Support of Motion to Dismiss the Complaint, for Summary Judgment, and for Other Relief*, Dkt. No. 52-10 at 12, 17; *Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment on Liability*, Dkt. No. 61 at 12-14.

from LPCiminelli, Liberty Mutual contends the Debtor necessarily waived recourse against them by releasing the primary obligor.[33] Put differently, if LPCiminelli has no payment obligation to the Debtor and never will, there cannot be a right to payment under the Bonds. Liberty Mutual also emphasizes the lack of any express reservation of rights against the Bonds in the liquidating agreements.[34]

  B. <u>The Debtor</u>

The Debtor argues that it has an undisputed claim for labor and materials provided for the Project and is therefore entitled to payment from either LPCiminelli or through the Bonds.[35] Beyond that basic premise, the Debtor's pleadings largely assume a defensive posture despite seeking affirmative relief. Indeed, the Debtor simply rejects Liberty Mutual's interpretation of the liquidating agreements without offering one of its own.[36] The Debtor denies releasing LPCiminelli or Liberty Mutual and asserts that "no document purports to restrict the Debtor's right to pursue a claim under the Bonds."[37] It emphasizes the absence of any "clear and unambiguous" waiver,[38] and points to Liberty Mutual's failure to seek dismissal of the Bond Litigation until now.[39]

---

[33] See *Motion by Defendant Liberty Mutual Life [sic] Insurance Company to Dismiss Adversary Complaint and for Other Relief*, Dkt. No. 52 at ¶¶ 5-7; *Memorandum of Law on Behalf of Defendant Liberty Mutual Insurance Company in Support of Motion to Dismiss the Complaint, for Summary Judgment, and for Other Relief*, Dkt. No. 52-10 at 12-18; *Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment on Liability*, Dkt. No. 61 at 12-14.

[34] See *Memorandum of Law on Behalf of Defendant Liberty Mutual Insurance Company in Support of Motion to Dismiss the Complaint, for Summary Judgment, and for Other Relief*, Dkt. No. 52-10 at 13, 15-16; *Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment on Liability*, Dkt. No. 61 at 10-11.

[35] See *Debtor's Cross-Motion for Summary Judgment on Liability*, Dkt. No. 56 at ¶ 10; *Debtor's Reply in Support of Cross-Motion for Summary Judgment on Liability*, Dkt. No. 69 at 3.

[36] See *Debtor's Combined Response to Defendant's Motion to Dismiss Adversary Complaint and for Other Relief and Brief in Support of Cross-Motion for Summary Judgment on Liability*, Dkt. No. 57 at 2.

[37] <u>Id.</u> at 4, 8-9.

[38] <u>Id.</u> at 5-6.

[39] <u>Id.</u> at 9-10.

IV.     **DISCUSSION**

    A.     <u>The Summary Judgment Standard</u>

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] A "genuine" issue is one supported by sufficient evidence that "a reasonable jury could return a verdict for the nonmoving party."[41] Material facts are those having the potential to "affect the outcome of the suit" under the applicable law.[42]

The party seeking summary judgment "always bears the initial responsibility . . . of identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which demonstrate the absence of a genuine issue of material fact."[43] The opposing party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."[44] The affirmative showing required must be "more than a scintilla," but may be "less (in the evaluation of the court) than a preponderance."[45] The court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[46]

---

[40]     Fed. R. Civ. P. 56(a) made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

[41]     <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

[42]     <u>Id.</u>

[43]     <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248; <u>see</u> Fed. R. Civ. P. 56(c)(1).

[44]     <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248 (quoting <u>First Nat. Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288, 88 S. Ct. 1575, 1592, 20 L. Ed. 2d 569 (1968)) (internal quotation marks omitted).

[45]     <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460–61 (3d Cir. 1989).

[46]     <u>Mikula v. Allegheny Cnty. of PA</u>, 583 F.3d 181, 185 (3d Cir. 2009) (citing <u>DL Res., Inc. v. FirstEnergy Solutions Corp.</u>, 506 F.3d 209, 216 (3d Cir. 2007)).

B. Analysis

From the start, the parties have glossed over the most essential factual element of this case: the nature of the Debtor's claim. While the Court has a general understanding of this dispute, the Claim has been characterized several different ways that seem more than a matter of semantics. The 2017 agreement defines the Claim as being for "Lost Time."[47] Through the Bond Litigation, the Debtor asserts a claim for "labor and materials provided by [the Debtor] for the Project."[48] Liberty Mutual contends the Debtor is actually seeking damages for the cost impacts on materials and labor caused by the Fund's delay.[49] Because no one has said otherwise, the Court presumes that these descriptions are supposed to refer to the same claim underlying both the Bond Litigation and the Fund Litigation.

Differences aside, there is an obvious unifying thread in that the Claim relates to unpaid labor and material expenses arising from the Project. And Liberty Mutual does not dispute that basic premise. They part company over how this ill-defined claim fits within the bonding, particularly in light of the liquidating agreements. Frankly, the Debtor relies on generalized assertions of liability that are untethered to any contractual detail and seemingly ignores the liquidating agreements entirely. This lack of nuance overlooks several impediments to the relief requested.

First off, the Bonds do not backstop all claims arising from the Project. To the contrary, the relevant Bond only covers "labor or materials ["furnish[ed]"] in prosecution of *the work provided in such Contract*," not simply for the Project.[50] In other words, the Debtor must

---

[47] *Exhibit E*, Dkt. No. 52-6.
[48] *Exhibit B*, Dkt. No. 52-3 at ¶ 13.
[49] See *Transcript of September 28, 2023 Hearing*, Dkt. No. 79 at 9:11-10:4.
[50] *Exhibit C*, Dkt. No. 52-4 at 2 (emphasis added).

establish that it is owed for labor and materials provided to LPCiminelli for work outlined in the Project's general contract. As the Court understands the events leading to the Fund Litigation, the Claim was not paid precisely because it was not contemplated in the general contract. Admittedly, the Fund Litigation challenges the alleged refusal to conform the general contract to the Project's true cost, suggesting that the claim's coverage status is perhaps in flux. Today, however, the Debtor has not shown its claim qualifies for coverage under the general contract.

The Fund Litigation similarly hampers the Debtor's efforts to establish both a guaranteed obligation and a right to payment necessary to state a claim against Liberty Mutual. Since Liberty Mutual is merely a surety for LPCiminelli's payment obligations, the relevant inquiry is: *what does LPCiminelli owe the Debtor right now?* To answer that question, the Court must consider the liquidating agreements.

The Debtor concedes that the liquidating agreements are enforceable and "say what they say."[51] In relevant part, the 2017 agreement says that "[the Debtor] hereby agree[s] to accept *in full satisfaction and discharge of the Claim against LPCiminelli* the amount, if any, recovered and collected by LPCiminelli from the Fund for the Claim."[52] The 2019 agreement added that if "[LPCiminelli] does not recover from the Fund any portion of the [Debtor's] Claims," the Debtor "*waives any recourse against [LPCiminelli]* related to the Project."[53] These agreements obviously altered the Debtor's rights vis-à-vis LPCiminelli, so the Debtor is plainly wrong that there was no "language suggesting any level of release of LPCiminelli."[54] Yet Liberty Mutual's argument that

---

[51]  *Debtor's Combined Response to Defendant's Motion to Dismiss Adversary Complaint and for Other Relief and Brief in Support of Cross-Motion for Summary Judgment on Liability*, Dkt. No. 57 at 2.

[52]  *Exhibit E*, Dkt No. 52-6 at 1 (emphasis added).

[53]  *Exhibit F*, Dkt. No. 52-7 at ¶ 5 (emphasis added).

[54]  See *Debtor's Combined Response to Defendant's Motion to Dismiss Adversary Complaint and for Other Relief and Brief in Support of Cross-Motion for Summary Judgment on Liability*, Dkt. No. 57 at 8.

the Debtor waived all recourse against LPCiminelli (and therefore, the Bonds) by agreeing to satisfaction solely from the Fund is also inaccurate.

The liquidating agreements evidence a clear intent by the parties to limit the Claim to whatever, if anything, LPCiminelli can recover from the Fund minus agreed offsets. Colloquially, that carries an expectation that the Fund would satisfy the Debtor's claim, but any award from the Fund Litigation would be paid to the plaintiff: LPCiminelli. Subcontractors like the Debtor would be paid afterward by LPCiminelli (albeit with the Fund's money) in accordance with their individual agreements. This means LPCiminelli has a contingent obligation under the liquidating agreements to pay to the Debtor the net-recovery on its claim if LPCiminelli extracts payment from the Fund. No more, no less. The takeaway is that LPCiminelli is on the hook unless the Fund prevails, but no monies are currently due because the claim depends on the outcome of the Fund Litigation.

The Debtor has offered no compelling explanation as to how a secondary obligation could be enforced before the primary obligation is quantifiable, let alone payable. In this sense, the Debtor's anti-waiver arguments miss the point because Liberty Mutual as a surety cannot have a greater obligation than LPCiminelli. In fact, "under New York law, the general rule is that, absent the surety's consent or an express reservation of rights by the obligee, the obligee's release of the principal discharges the obligations of the surety."[55] Needless to say, the liquidating agreements contain no such reservation of rights partially releasing LPCiminelli. At best, the Debtor posits the 2018 commencement of the Bond Litigation and the failure to dismiss it after the 2019 agreement evidences such an intent. Yet the Court is unpersuaded because LPCiminelli did

---

[55] *120 Greenwich Dev. Assocs., LLC v. Reliance Ins. Co.*, No. 01 CIV.8219(PKL), 2004 WL 1277998, at *10 (S.D.N.Y. June 8, 2004) (collecting cases).

not discharge its duty under the liquidating agreements to pursue the Debtor's claim until it launched the Fund Litigation in 2022.[56] After that, the Court presumes Liberty Mutual opted not to rock the boat or incur the expense of seeking dismissal since the Bond Litigation was stayed by agreement.

In sum, the Bond Litigation is so inextricably intertwined with the Fund Litigation that the Debtor cannot show a presently due, quantifiable obligation of LPCiminelli that is guaranteed by Liberty Mutual.

### V.    CONCLUSION

In light of the foregoing, the Court will grant Liberty Mutual's motion, deny the Debtor's cross-motion, and dismiss the Bond Litigation without prejudice. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: March 18, 2025

GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:

---

[56] See *Exhibit C*, Dkt. No. 52-4 at 2.